AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original    ❑


CLERK'S OFFICE
A TRUE COPY
Jul 15, 2026
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **26-M-469 (SCD)** |
| person of Christopher SIFUENTES (AKA Christopher LOZANO) (DOB xx/xx/1997); PREMISES (3322A S. 9th Place, Milwaukee, WI (upper unit)); and a 2021 Grey Jeep Gladiator Mojave WI license plate 'ELIEL09' | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A1, A2, and A3.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____7-29-26_____ *(not to exceed 14 days)*
X in the daytime 6:00 a.m. to 10:00 p.m.    ❑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C. Dries_____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*    ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:      7-15-26. 10:50 am _____

*Stephen C. Dri* [signature]
*Judge's signature*

City and state:      Milwaukee, WI _____      Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A1
### Person to Be Searched

Christopher SIFUENTES, DOB xx/xx/1997, Hispanic male.

38

The residence of **3322A S. 9th Place, Milwaukee, Wisconsin (upper unit)**. The residence is described as a residential home. The home has tan/cream siding and a brown/multi-colored shingle roof. The front of the home has '3322A' and '3322' affixed [3322 is underneath 3322A] on the front porch pillar. The front of the residence faces west on S. 9th Place, and the rear of the residence faces east, attached to an alley. There is a detached rear garage in the alley





Residence, Detached Rear Garage and Rear Alley

39

# ATTACHMENT A3
## Vehicle to be Searched

The vehicle registered by Christopher SIFUENTES described as a **Grey 2021 Jeep Gladiator Mojave Crew Cab Pickup with WI license plate ELIEL09/associated VIN of 1C6JJTEG7ML619277.**



Source: Vehicle Detail
Owner: SIFUENTES, CHRISTOPHER
Year: 2021
Make/Model: JEEP GLADIATOR
VIN: 1C6JJTEG7ML619277
License Plate: ELIEL09
Registration State: WI
Registration Date: 04/07/2026
Expiration Date: 08/31/2026
Make/Model: JEEP

Address:
3322 S 9TH PL
MILWAUKEE, WI 53215

1.      All records relating to violations of Title 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license), § 18 U.S.C § 544 (smuggling goods from the United States), 18 U.S.C. § 922(a)(9) (non-resident/non FFL received firearms), 18 U.S.C. § 933 (Trafficking of firearms) and 18 U.S.C. § 371 (conspiracy), involving Christopher SIFUENTES, and others, and occurring on or after January 1, 2022, including:

a.   firearms and ammunition;

b.   firearm components and parts;

c.   machines or other devices to make or assemble firearms;

d.   records relating to any ATF forms or firearm or ammunition licensing

e.   information regarding the identities of any perpetrators and/or co-conspirators;

f.   information or receipts pertaining to firearms/components purchases and/or sales;

g.   information concerning SIFUENTES' schedule, travel, and/or location at particular relevant times;

h.   relevant bank records, checks, credit card bills, account information, and other financial records;

i.   electronic devices, including cellphones and computers;

j.   relevant photos, videos, IP addresses, contact information, contact lists, searches, or website;

k.   text messages, social media messages and content, SMS messages, iMessage data, or other messaging applications relating to the sale and/or trade of firearms;

l.   electronic mail to include the content of the emails, and associated email addresses, relating to the sale and/or trade of firearms;

m. all records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

41

n. all records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

o. Records and information relating to the e-mail accounts of SIFUENTES, from January 1, 2022, to the present;
   i. M.angas@hotmail.com
   ii. Christopher.lozano.35175@facebook.com
   iii. Christophersifuentes701@gmail.com
   iv. Christopherlozano34@icloud.com

2. Computers or storage media used as a means to commit or facilitate the violations described above, including cellular phones.

3. For any cellular phone, computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

42

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;
h. evidence of the times the COMPUTER was used;
i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;
j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;
k. records of or information about Internet Protocol addresses used by the COMPUTER;
l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;
m. contextual information necessary to understand the evidence described in this attachment.

4. Routers, modems, and network equipment used to connect computers to the Internet.

   a. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

   b. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

   c. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

5. Records and information relating to sales; communications with buyers, communications with material and part suppliers, and information relating to advertisements via professions sources such as advertisements in published media, social media avenues, or private methods such as fliers and business cards.

43

During the execution of the search of SIFUENTES described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of SIFUENTES; (2) hold a device found on SIFUENTES in front of SIFUENTES' face, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

Case 2:26-mj-00469-SCD    Filed 07/15/26    Page 9 of 54    Document 1

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Jul 15, 2026
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>person of Christopher SIFUENTES (AKA Christopher LOZANO) (DOB xx/xx/1997); PREMISES (3322A S. 9th Place, Milwaukee, WI (upper unit)); and a 2021 Grey Jeep Gladiator Mojave WI license plate 'ELIEL09' | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. **26-M-469 (SCD)** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A1, A2, and A3.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(a)(1)(A), 18 U.S.C § 544, 18 U.S.C. § 922(a)(9), 18 U.S.C. § 933, and 18 U.S.C. § 371 | engaging in a firearms business without a license, smuggling goods from the United States, non-resident/non FFL received firearms, trafficking of firearms, and conspiracy |

The application is based on these facts:

Please see Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Digitally signed by Alexis Krusic
DN: cn=Alexis Krusic, o=Bureau of ATF, ou=Milwaukee Field Office,
email=alexis.krusic@atf.gov, c=US
Date: 2026.07.14 16:52:47 -05'00'

Alexis Krusic, ATF Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: \_\_\_\_7-15-26\_\_\_\_

*Judge's signature*

City and state: \_\_\_Milwaukee, WI\_\_\_     Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF AN**</u>
<u>**APPLICATION UNDER RULE 41 FOR A**</u>
<u>**WARRANT TO SEARCH AND SEIZE**</u>

I, Alexis Krusic, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.        I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the person of Christopher SIFUENTES (AKA Christopher LOZANO) (DOB xx/xx/1997); PREMISES (3322A S. 9th Place, Milwaukee, WI (upper unit)); and a 2021 Grey Jeep Gladiator Mojave WI license plate 'ELIEL09', described in Attachments A1, A2, and A3 and the seizure from that property evidence described in Attachment B.

2.        I am a Task Force Officer (TFO) of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee IV Field Office.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.        I am a Detective out of the Criminal Investigations Division with the Milwaukee County Sheriff's Office (MCSO) since 2020. I have been employed with MCSO since January of 2016 and an ATF TFO since March of 2020.  My duties as a TFO with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes. My duties with MCSO include investigating state violations of all criminal offenses.

4.        I have completed approximately 920 hours/6 months of training at the Milwaukee County Sheriff's Office Training Academy through the Wisconsin Law Enforcement Standards Bureau.  That training included various legal courses related to Constitutional Law as well as

1

search and seizure authority.  Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection. I have read reports and worked with other officers/agents in complex investigations where I know that criminals put information on social media platforms to convey a message to groups of people and use their cellphones to communicate with individuals about the crime(s) they have committed to include before, during and after the incident.

5.      I have been part of MCSO's Bomb Squad Unit since 2019 and have taken part in multiple explosive investigations and disposal of devices. I completed the Federal Bureau of Investigation's Hazardous Devices School, 5-week certification program, to become a certified bomb technician.

6.      I received my bachelor's degree from the University of Wisconsin-Milwaukee in Criminal Justice with a specialty in Crime Analysis in 2015.

7.      I have participated in firearm trafficking investigations that involved the search of social media, and the seizure of computers, cellular phones, cameras, and other digital storage devices. The subsequent analysis of electronic data stored within these accounts or computers, cellular phones, cameras, and other digital storage devices, on many occasions, has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

8.      Through my training and experience, I have become aware of the methods used by firearm traffickers to smuggle, safeguard, and distribute firearms, and to collect and launder trafficking-derived proceeds. I know that firearm traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

2

9. I also know from training and experience that it is common for firearm traffickers, firearm possessors, and firearm straw purchasers to communicate by cellular phone through a variety of electronic media. The participants in these criminal organizations can use text (SMS) messaging, iMessage, phone calls, electronic mail, messaging applications, and various social media applications such as Facebook, Snapchat and Twitter to communicate about and organize criminal activity. Furthermore, based on my training and experience, I know that people who are prohibited from purchasing firearms (e.g., felons) will communicate with people who are authorized to purchase firearms by means of cellular telephone to coordinate the purchase of firearms. Lastly, I know that it is common for straw purchasers to conduct research or purchase firearms by visiting gun sales websites, including via their phones.

10. I am personally involved in the investigation of the offenses discussed in this affidavit and I am familiar with all aspects of this investigation. The statements contained in this affidavit are based on my knowledge and, in part, information provided by law enforcement officers (LEOs), including (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written reports that I have received directly or indirectly from other LEOs about this and other investigations; (c) discussions I personally had concerning this investigation with other experienced investigators; (d) public records; (e) records obtained from law enforcement databases; (f) my training and experience as an ATF task force officer; and (g) the training and experience of other LEOs involved in this investigation.

11. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement persons, who have provided information to me during the course of their official duties and whom I consider to be truthful and

3

reliable, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

12.     Based on the circumstances described below, there is probable cause to believe that Christopher SIFUENTES (DOB XX/XX/1997), of Milwaukee, Wisconsin, has committed the crimes of Title 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license), § 18 U.S.C § 544 (smuggling goods from the United States), 18 U.S.C. § 922(a)(9) (non-resident/non FFL received firearms), 18 U.S.C. § 933 (Trafficking of firearms) and 18 U.S.C. § 371 (conspiracy). There is probable cause to search the PREMISES described in Attachment A for evidence of these crimes, further described in Attachment B.

### PERSON AND PROPERTY TO BE SEARCHED

13.     As detailed below, there is probable cause to believe Christopher SIFUENTES, his residence, and his vehicle contain items that constitute evidence of criminal violations of federal laws.

14.     As detailed below, there is probable cause to believe there is evidence of criminal violations of federal laws on the **person of SIFUENTES (Attachment A1)**; within the location in **Attachment A2: 3322A S. 9th Place, Milwaukee, Wisconsin (upper unit)**, which includes storage unit(s) (if applicable), detached garage in rear of residence, and shared areas. This address is utilized by Christopher SIFUENTES. The PREMISES is a residential home. The home has tan/cream siding and a brown/multi-colored shingle roof. The front of the home has '3322A' and '3322' affixed [underneath 3322A] on the front porch pillar. The front of the residence faces west on S 9th Place, and the rear of the residence faces east, attached to an alley. There is a detached rear garage attached to the alley. This location is hereafter referred to as "PREMISES" and contains items that constitute evidence of criminal violations of federal firearm laws. Agents are aware that

4

the side-rear door of the PREMISES is believed to be the entrance for the upper unit located at **3322A S. 9th Place, Milwaukee, Wisconsin**, and agents verified that entrance is used by SIFUENTES.

15.  Also, as detailed below, there is probable cause to believe there is evidence of criminal violations of federal laws within the vehicle in **Attachment A3: Gray 2021 Jeep Gladiator Mojave Crew Cab Pickup with WI license plate ELIEL09/associated VIN 1C6JJTEG7ML619277 [registered to SIFUENTES]**.

## PROBABLE CAUSE

16.  An investigation into the below subjects began when Customs and Border Patrol (CBP)/Homeland Security Investigation (HSI) reported a firearms seizure that took place at the United States Port of Entry in Eagle Pass, Texas, where a transporter from Wisconsin was found with two (2) firearms and (4) magazines that were shipped by Christopher SIFUENTES (XX/XX/97).

### *ARREST AND STATEMENT OF DANIEL ACOSTA*

17.  On April 16, 2023, Daniel Z ACOSTA (XX/XX/77) was stopped at the border while traveling into Mexico through the Eagle Pass, Texas, Port of Entry-Bridge 2. ACOSTA was driving a white Chevrolet Express 3500 van bearing Wisconsin license plate TX5815 with an attached trailer with Wisconsin license plate 15016.

18.  During an inspection of ACOSTA's Van and Trailer by investigators, a Canik TP-9DA 9mm caliber pistol with serial number (SN) 21BJ09440 and a Walther P22 .22 caliber pistol with SN WA252381 along with four magazines were recovered. These items were concealed in a radiant heater box and a piano speaker that was located within the trailer.

19.  Pursuant to a Mirandized interview, ACOSTA explained that he was employed by

5

'Top Notch Movers' for the previous two years and delivers items to Mexico as a source of income. ACOSTA stated that he performed these deliveries as more of a reason to visit his family in Zacatecas, Mexico.

20. ACOSTA further stated that the delivery business (Top Notch Movers) belonged to his brother—Christopher SOLOMON. ACOSTA stated that he stops at multiple addresses provided by a person he knows as 'Christopher'—later identified as Christopher SIFUENTES—to collect items from people and then transfer those items to Mexico.

21. ACOSTA stated he contacts SIFUENTES's "uncle" known as "Felipe Vasquez" in Zacatecas, Mexico, who provides ACOSTA with an address via Whatsapp to drop off the items.

22. ACOSTA relayed at that point, he had made approximately four to five deliveries to Mexico for SIFUENTES within that year (2023).

23. ACOSTA provided the address for SIFUENTES as **3322 S. 9th Place in the City and County of Milwaukee, WI**, which investigators confirmed listed back to SIFUENTES.

24. ACOSTA also provided the phone number for SIFUENTES as (414) 405-3917. Through a Whatsapp subpoena for activity through February 2026, investigators confirmed that SIFUENTES' number (414) 405-3917 was connected to a Whatsapp account with registered Gmail: christophersifuentes701@gmail.com.

25. ACOSTA told investigators that SIFUENTES was going to be flying into Zacatecas, Mexico, the following week from Wisconsin.

26. ACOSTA stated that the items (that the firearms were concealed in) were going to be delivered to Vasquez.

27. ACOSTA provided the Whatsapp number for Vasquez as +52-498-103-0320.

28. Investigators identified a Whatsapp user with this number as "Felipe Longoria

6

Carpintero" from Rio Grande, Zacatecas, Mexico.

29.     ACOSTA stated that SIFUENTES told him on April 9, 2023, that there were two items at SIFUENTES's residence that he needed ACOSTA to bring to Zacatecas, Mexico. It should be noted that SIFUENTES made two firearm purchases on April 6, 2023 (see below).

30.     ACOSTA arrived at SIFUENTES's residence, and SIFUENTES had the radiant heater box and the black luggage sitting outside of his residence. ACOSTA stated SIFUENTES had paid him $100 USD for transporting the items to Mexico.

*SIFUENTES' 2018-2023 FIREARM PURCHASES AND RECOVERIES*

31.     SIFUENTES made the following firearm purchases:

    i.    April 6, 2023, from Fletcher Arms (Waukesha, WI): Walther P22 .22 caliber pistol with Serial Number (SN) WA252381. **Recovered** April 16, 2023 (10 days after purchase) on Texas Mexico border in trailer driven by Daniel ACOSTA (XX/XX/77) attempting to enter Mexico.

    ii.   April 6, 2023, from Fletcher Arms (Waukesha, WI): Canik55 TP9-DA 9mm pistol with SN 21BJ09440. **Recovered** April 16, 2023 (10 days after purchase) on Texas Mexico border in trailer driven by Daniel ACOSTA (XX/XX/77) attempting to enter Mexico.

    iii.  June 6, 2021, from Fletcher Arms (Waukesha, WI): Canik55 TP9SA 9mm pistol with SN 21AP05852.

    iv.   December 16, 2018, from Eisen Arms (West bend, WI): Ruger SR9B 9mm pistol with SN 338-06229.

    v.    December 16, 2018, from Eisen Arms (West bend, WI): HiPoint C9 9mm pistol with SN P10054308.

7

32.     "Time to Crime" is a common term used to describe the last known legal possession of a firearm (often the date purchased from the authorized firearm dealer known as the Federal Firearms Licensee (FFL)) and the date of its first use in a crime (often the recovery date). Affiant knows from information published by the ATF's Violent Crime Analysis Branch (as of June 16, 2016) the national average time for a gun to be recovered in a crime by law enforcement after the original purchase date is 10.48 years (also known as "time to crime"). Additionally, the average time to crime of firearms is Wisconsin is 8.18 years. Affiant knows a short time to crime is a strong indication of firearms trafficking or "straw buying." The term "straw buying" is used to describe the purchase of a firearm knowing it will be provided to a second party.  Affiant knows from training and experience that "straw buying" can be done to either provided firearms to a subject who cannot themselves legally buy firearms or to conceal the true owner of that firearm.

33.     SIFUENTES' April 6, 2023, firearm purchases had a short time to crime.

34.     Affiant knows from training and experience that purchases of the same make/model of a firearm can be a strong indication of firearms trafficking.

35.     Investigators obtained/reviewed video from SIFUENTES's April 6, 2023 (transfer date) firearm purchases from Fletcher Arms. Investigators observed that on March 30, 2023, SIFUENTES' filled out a Firearms Transaction Record or ATF Form 4473. ATF Form 4473 is form required for the purchase of a firearm from an FFL. Among other requirements, firearm purchasers must truthfully identify their name, their residence, and provide a form of identification. Firearm purchasers are also required to identify that they are buying the firearm for themselves and not another person. For his April 6, 2023, firearm purchases, SIFUENTES utilized his Wisconsin driver's license as a form of identification required to complete the form. SIFUENTES listed his current residence as 1819 E. Rusk Avenue, Milwaukee, WI 53207 and Social Security

8

Number (SSN) as XXX-XX-5356.

36.     Under question 21.a., which asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF From 5300.9A)? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.", SIFUENTES checked "Yes".

37.     Under question 21.b., which asks, "Do you intend to purchase or acquire any firearm listed on this form and any continuation sheet(s), or ammunition, for sale or other disposition to any person described in questions 21(c)-(m), or to a person described in question 21.n.1 who does not fall within a nonimmigrant alien exception?", SIFUENTES checked "No".

38.     Under question 21.c., which asks, "Do you intend to sell or otherwise dispose of any firearm listed on this form and any continuation sheet(s) or ammunition in furtherance of any felony or other offense punishable by imprisonment for a term of more than one year, a Federal crime of terrorism, or a drug trafficking offense?", SIFUENTES checked "No".

39.     Under questions 22 and 23, SIFUENTES signed and dated the ATF Form 4473 on March 30, 2023. By signing here, SIFUENTES certified all his answers on the form were "true, correct, and complete." Furthermore, SIFUENTES acknowledged he has read and understood the "Notices, Instructions, and Definitions on ATF Form 4473."

40.     Under Section D question 30 and 31, which must be completed personally by the transferee/buyer if the transfer of the firearm(s) occurs on a different day from the date the transferee/buyer signed originally, SIFUENTES again signed and dated the form on April 6, 2023. By again signing here, SIFUENTES certified all his responses that were originally made on the form on March 30, 2023, were still true, correct, and complete.

9

41.  It is important to note, on the first page of the ATF Form 4473, at the very top of the page, there is a warning which states, "WARNING: The information you provide will be used to determine whether you are prohibited by Federal or State Law from receiving a firearm, or whether Federal or State Law prohibits the sale or disposition of a firearm to you. Certain violations of the Gun Control Act, 18 U.S.C. §921 et. Seq., are punishable by up to 15 years imprisonment and/or up to a $250,000 fine. Any person who exports a firearm without a proper authorization from either the Department of Commerce or the Department of State, as applicable, is subject to a fine of not more than $1,000,000 and up to 20 years imprisonment." (Agent Notes: SA Ernst underlined the sentence above to highlight the exportation language which is applicable to SIFUENTES in this matter.)

42.  SIFUENTES was also required to fill out a Wisconsin Department of Justice Firearms Dealer Notification (Handgun Transfers) Form in association with the purchase. The information provided on this form reflects the same information SIFUENTES provided on the ATF Form 4473. It is important to note in 2023, SIFUENTES provided his telephone number on this form as being (414) 405-3917 and listed SIFUENTES's email address as christophersifuentes701@gmail.com.

43.  A review of the ATF Form 4473s signed by SIFUENTES revealed that each time he answered "Yes" to question 11a which stated, "Are you the actual buyer/transferee of the firearm(s) listed on this form?"

44.  On March 30, 2023, SIFUENTES filled out a firearm layaway with Fletcher Arms (Waukesha, WI) for a Canik TP-9 DA 9mm pistol with SN 21BJ09440 and Walther P22 .22 caliber pistol with SN WA252381 (transferred to him on April 6, 2023) and provided a name of Christopher SIFUENTES, address of 1819 E. Rusk Avenue, Milwaukee, WI, phone number of

10

(414) 405-4917 and email address of christophersifuentes701@gmail.com.

<u>*SIFUENTES'S GUNBROKER ACCOUNT*</u>

45. Pursuant to a GunBroker subpoena for 2021 to 2026, SIFUENTES had two accounts. For the first account, he provided an email of christopherlozano34@icloud.com, the name Christopher Lozano, residing at 1571A S. Pearl Street, Milwaukee, WI and phone number of (414) 405-3917. For SIFUENTES' second account, he provided an email of christophersifuentes701@gmail.com, the name Christopher SIFUENTES residing at 1819 E. Rusk Avenue, Milwaukee, WI and phone number of (414) 405-3917. SIFUENTES registered in 2019 and 2020 for these accounts.

<u>*MIZAEL LOZANO FIREARM PURCHASES AND MEXICO RECOVERIES*</u>

46. SIFUENTES' stepfather was identified as Mizael LOZANO (XX/XX/76) who resides at 1571 S. Pearl Street, Milwaukee, WI. LOZANO was identified pursuant to a CBP stop of SIFUENTES where he provided an emergency contact for his stepfather 'Michael LOZANO'. SIFUENTES' used this address on his Wisconsin Identification card in 2018, and that address was provided as documentation for a Passport.

47. Mizael LOZANO made the following firearm purchases:

　i. December 17, 2016, from Eisen Arms (West Bend, WI): HiPoint JCP .40 caliber pistol with SN: X7265113. **Recovered** September 8, 2022, in San Juan Del Rio, QT Mexico, via ATF E-Trace Form T20220484804.

　ii. November 12, 2008, from Badger Guns Inc. (West Milwaukee, WI): Taurus PT100 AFS 9mm pistol SN: STB74368. **Recovered** October 11, 2019, in Fresnillo, Zacatecas, Mexico, via ATF E-Trace form T20190362539.

　iii. December 20, 2017, from Cabela's (Richfield, WI): Taurus PT111 G2 9mm

11

pistol SN: TKY02255.

 iv. December 20, 2017, from Cabela's (Richfield, WI): Taurus PT111 G2 9mm pistol SN: TKU25859.

 v. February 26, 2018, from Dunham's (Franklin): Heritage MFG Rough Rider .22 caliber revolver SN: U77866.

 vi. February 26, 2018, from Dunham's (Franklin): Heritage MFG Rough Rider .22 caliber revolver SN: V64604.

 vii. April 12, 2023, from Fletcher Arms (Waukesha, WI): Anderson Manufacturing AM-15 multi-caliber receiver SN: 22030503.

 viii. April 12, 2023, from Fletcher Arms (Waukesha, WI): Aero Precision LLC M5 multi-caliber receiver SN: US309554.

 ix. December 16, 2025, from Fleet Farm (Muskego, WI): Beretta Pietro, S.P.A 80X Cheetah .380 caliber pistol SN: Y033873X.

 x. December 16, 2025, from Fleet Farm (Muskego, WI): Beretta Pietro, S.P.A 80X Cheetah .380 caliber pistol SN: Y024131X.

48. LOZANO filled out a Wisconsin Department of Justice Firearms Dealer Notification (Handgun Transfers) Form in association with his April 12, 2023, purchase. The information provided on this form reflects the same information LOZANO provided on ATF Form 4473. LOZANO provided his telephone number on this form as being 414-324-4747. The sales receipt/layaway form(s) associated with the purchase showed LOZANO listed his email address as mizaellozano33388@gmail.com.

49. A review of the ATF Form 4473s signed by LOZANO revealed that each time he answered "Yes" to question 11a which stated, "Are you the actual buyer/transferee of the

12

firearm(s) listed on this form?"

50.     Investigators believe that SIFUENTES, LOZANO, and ACOSTA are associates involved in criminal firearms trafficking.

51.     Pursuant to a subpoena from PayPal, ACOSTA provided the following phone numbers: (608) 577-7188 and (608) 886-0312 on his accounts.

*VERIZON ACCOUNT*

52.     Pursuant to a Verizon subpoena, Affiant observed call records for (414) 405-3917 with a timeframe of January 1, 2023, to January 29, 2026. The subscriber for this telephone number is Odalis CORRO ARCOS, who Affiant is aware is the mother of SIFUENTES' child. In July 2026, agents saw CORRO ARCOS entering SIFUENTES' residence located at **3322A S. 9th Place, Milwaukee**. SIFUENTES' number (414) 405-3917 was also identified as the number he provided on the Wisconsin Handgun Hotline forms while purchasing firearms in 2023. As of July 2026, CLEAR phone data shows (414) 405-3917 connected to SIFUENTES.

*TELEPHONE CONTACTS TO MEXICO*

53.     Pursuant to a Verizon subpoena, Affiant observed call records for SIFUENTES with a timeframe of January 1, 2023, to January 29, 2026. SIFUENTES' phone number was identified as the number he provided on the Wisconsin Handgun Hotline forms while purchasing firearms. SIFUENTES' phone number was identified as (414) 405-3917.

54.     SIFUENTES called two Mexican phone numbers a total of three times from this US number. Based on the area code of the phone numbers he communicated with, they were from one of the following areas of Mexico (area code 400-499): Aguascalientes, Guanajuato, Hidalgo, Jalisco, Michoacán, Nuevo León, Querétaro, San Luis Potosí, Tamaulipas, Veracruz, or Zacatecas (where SIFUENTES frequents). It should be noted that SIFUENTES had multiple Mexican phone

13

numbers linked to his Meta account.

55.      Pursuant to a T-Mobile subpoena, Affiant observed call records for LOZANO with a timeframe of January 1, 2023, to January 29, 2026. LOZANO's phone number was identified as the number he provided on the Wisconsin Handgun Hotline forms while purchasing firearms. LOZANO's phone number was identified as (414) 324-4747.

56.      While reviewing LOZANO's phone records, investigators observed LOZANO had communication with (414) 326-8284, (414) 301-0307 and (414) 326-7587 that all listed back to LOZANO via investigative databases.

57.      LOZANO called 49 Mexican phone numbers a total of 606 times.

58.      Pursuant to a Verizon subpoena, Affiant observed call records for ACOSTA with a timeframe of January 1, 2023, to January 29, 2026. ACOSTA's phone number was identified as (608)886-0312 pursuant to a PayPal subpoena. ACOSTA stated in his CBP interview that he communicated with SIFUENTES via Whatsapp.

59.      ACOSTA called nine Mexican phone numbers a total of 40 times.

*TELEPHONE CONTACTS AMONG THE SUSPECTS*

60.      Investigators also reviewed telephone contact records between January 1, 2023, to January 29, 2026, for LOZANO and the records showed LOZANO communicated with SIFUENTES 101 times, and ACOSTA once.

61.      Investigators also reviewed telephone contact records between January 1, 2023, to January 29, 2026, for SIFUENTES and the records showed SIFUENTES communicated with LOZANO nine times.

*BORDER CROSSINGS*

62.      SIFUENTES traveled into Mexico 14 times between April 2022 and February

14

2026, and LOZANO traveled into Mexico 8 times between August 2022 and January 2026.

<u>*SIFUENTES' GMAIL ACCOUNT*</u>

63.     Pursuant to a federal search warrant on SIFUENTES' Gmail account, the following worth noting was located.

64.     From March 6, 2025, to December 12, 2025, there were multiple emails received from firearm or ammunition stores (Palmetto State Armory, Primary Arms, Midsouth Shooter's Supply, Bear Creek Arsenal, Fletcher Arms, Grabagun, etc.).

65.     From April 16, 2022, to February 18, 2026, SIFUENTES received multiple emails regarding his itineraries to Mexico, to include rental car reservations in Mexico.

66.     SIFUENTES received multiple emails regarding money transfers to subjects in Mexico via Boss Revolution Money Transfer Service:

   a.   SIFUENTES made a payment May 1, 2023, to 'Felipe Longoria' for cash pickup with the listed address for Longoria of 'Santa Teresa, Rio Grande, Zacatecas, MX' and phone number of 52-498-103-0320 for $280.60 USD or 5001 MXN. It should be noted that during the interview of ACOSTA, he was to bring the items that were seized (firearms) to 'Felipe' and provided the above phone number for 'Felipe' in his interview. Case agents located a 'Felipe Longoria' associated to the Whatsapp number.

   b.   In total, SIFUENTES sent 35 money transfers to subjects in Mexico, with the majority of the payments being the same amount in MXN amounts, varying in USD (based on exchange rate) between April 2023 and April 2026.

   c.   SIFUENTES had emails for flight purchases between/around some of the money transfers to subjects in Mexico.

15

67. SIFUENTES received an email that he used 'Ria Money Transfer' to send $759.96 USD or 13,000.03 MXN to 'Kevin' in November 2023.

68. March 26, 2025, SIFUENTES received an email for a .300 caliber blackout upper barrel with charging handle had been shipped to his residence of **3322 S. 9th Place, Milwaukee, WI**. The item was delivered on March 28, 2025.

69. March 28, 2025, SIFUENTES received an email confirming his order of a 12-gauge shotgun and the item shipped April 1, 2025, to Eagle Sports Range (Cudahy, WI). Delivered April 3, 2025, to Eagle Sports Range.

70. April 5, 2025, SIFUENTES received an email of a money transfer to a subject in Mexico for 1300 MXN ($64.36).

71. On April 8, 2025, SIFUENTES received an email for a flight itinerary to leave Chicago O'Hare International Airport, traveling to Monterrey, Mexico via a one-way ticket and he was listed as the sole passenger.

72. April 15, 2025, SIFUENTES received an email for a car rental confirmation for April 16-April 19, 2025, from Mariano Escobedo International Airport (Monterrey, Mexico).

73. April 21, 2025, SIFUENTES received an email for a flight itinerary to leave Monterrey, MX to Chicago O'Hare April 23, 2025.

74. April 22, 2025, SIFUENTES received an email from Boss Money Revolution for a money transfer he made to a subject in Mexico for 3555 MXN ($183.30 USD).

75. May 25, 2025, SIFUENTES received an email for his purchase of an AR15 lower to be shipped to Eagle Sports Range (Cudahy, WI). It was shipped on May 28, 2025.

76. June 3, 2025, SIFUENTES received an email that his order from 'Ammunition Depot' would be delivered to **3322 S. 9th Place, Milwaukee, WI**.

77. June 6, 2025, SIFUENTES received an email from Boss Money Revolution for a money transfer he made to a subject in Mexico for 1300 MXN ($68.75 USD)

78. September 7, 2025, SIFUENTES received an email of an order for an ATI Alpha Maxx pistol that was to be shipped to Eagle Sports Range (Cudahy, WI). This was shipped September 15, 2025.

79. On December 11, 2025, SIFUENTES received an email confirming his order for a charging FDE upper Barrel rail shipped to him at **3322 S. 9th Place, Milwaukee, WI**. The item was shipped December 15, 2025, and delivered December 18, 2025. On the same date, SIFUENTES received an email confirming his order of a SAR USA B6C pistol to be shipped to Eagle Sports Range (Cudahy, WI). This was shipped on December 17, 2025.

80. December 12, 2025, SIFUENTES received an email from Midsouth Shooter's confirming his order of [5] 123 grain boxes of ammunition to be shipped to **3322 S. 9th Place, Milwaukee, WI**.

81. February 15, 2026, SIFUENTES received an email from Boss Money Revolution for a money transfer he made to a subject in Mexico for 9600 MXN ($563.05 USD).

82. February 17, 2026, SIFUENTES received an email confirming a flight itinerary to leave Chicago Midway to Zacatecas, MX leaving February 19, 2026, returning February 24, 2026.

*SIFUENTES' 2025 FIREARM PURCHASES*

83. Affiant located the following SIFUENTES' firearm purchases that were shipped to Eagle Sports FFL, located in Cudahy, WI:

    a. April 4, 2025 (online order from Sportsman's Outdoor March 28, 2025) purchase of a G-Force Arms GF-12AR 12-gauge shotgun, with serial number 33H24YD007823.

17

b. May 30, 2025 (online order from Palmetto State Armory May 25, 2025) purchase of an Anderson Manufacturing Dark Horse .556 caliber rifle SN: 25041590 and a Palmetto State Armory PSA AR-15 complete lower receiver SN: SCNL255626.

c. September 7, 2025 (online order from Palmetto State Armory) purchase of an ATI Alpha Maxx (FFL did not send an ATF Form 4473 for this purchase, but email for SIFUENTES showed the order and shipping confirmation to Eagle Sports Range).

d. September 18, 2025, purchase of American Tactical ATIGAX5567 MilC .556 caliber pistol SN: NX033912.

e. December 19, 2025 (online order from Palmetto State Armory December 11, 2025) purchase of a SAR USA B6C 9mm pistol SN: Tl 102-25G00555 and a SAR USA SAR9 METE 9mm pistol SN: Tl 102-23CD23675.

*SIFUENTES' APPLE ACCOUNT*

84. SIFUENTES had an Apple account linked to his name, email [christopherlozano34@icloud.com], phone number [414-405-3917], and address of **3322 S. 9th Place, Milwaukee, WI**.

85. Phone messages were not backed up to his iCloud account via Apple, but media was saved, and there were images of SIFUENTES, flight itineraries, firearms, and photos of SIFUENTES in Mexico.

86. Affiant located a photo in the media of this Apple iCloud from Wisconsin Firearms and Transfers with SIFUENTES' name as the customer and located the following purchase made by SIFUENTES on October 21, 2022: Canik Mete SF 9mm pistol SN: 22BU01086 from Wisconsin Firearms and Transfers (FFL).

18

87.     Pursuant to a Meta subpoena, SIFUENTES provided the following information for his Facebook account (Christopher.Lozano Profile ID 10001679288972): name of Christopher Lozano, emails of m.angas@hotmail.com, Christopher.lozano.35175@facebook.com, christophersifuentes701@gmail.com, and the following phone numbers (414) 405-3917; 52-312-593-9513; +52-312-595-6507; +52-498-104-3935; +52-498-106-9193; +52-498-981-4929; and +52-498-151-0331.

88.     Investigators located the following Meta social media for SIFUENTES: (1) **Facebook:** Profile Name: "Christopher Lozano" (User ID: 100001679288972) https://www.facebook.com/christopher.lozano.351; and (2) **Instagram:** Profile Name: "christopher_lz_" (User ID: 674892615) https://www.instagram.com/christopher_lz_/

89.     Via SIFUENTES' Facebook profile, via publicly available information, SIFUENTES listed that he was from Zacatecas, Mexico, despite being born in California.

90.     Via SIFUENTES' Instagram profile, via publicly available information, SIFUENTES posted a photo of himself in front of a vehicle with the location on the image tagged as being in Zacatecas, Mexico.

91.     On SIFUENTES's Meta accounts- Facebook [phone number] and Instagram [phone number and email] telephone number [414-405-3917] and email address [christophersifuentes701@gmail.com] associated with the Meta accounts, is connected to evidence of firearm purchases:

      a. SIFUENTES provided his phone number [414-405-3917] on ATF form 4473 via Eisen Arms LLC [FFL] on December 16, 2018, to purchase a Ruger SR9B 9mm pistol SN: 338-06229 and a Hi-Point C9 9mm pistol SN: P10054308

19

b.  SIFUENTES provided his phone number [414-405-3917] on ATF form 4473 via Fletcher Arms [FFL] on June 6, 2021, to purchase a Canik/Century Arms TP9SA 9mm pistol SN: 21AP05852

c.  SIFUENTES provided his phone number [414-405-3917] and email address [christophersifuentes701@gmail.com] on the firearm purchase receipt via Wisconsin Firearms and Transfer [FFL] on October 24, 2022, to purchase a Canik Mete SF 9mm pistol SN: 22BU01086

d.  SIFUENTES provided his email address [christophersifuentes701@gmail.com] on March 26, 2025, during an online purchase from Bear Creek Arsenal for a .300 blackout upper barrel that was shipped to his residence of **3322 S. 9th Place, Milwaukee, WI**

e.  SIFUENTES provided his email address [christophersifuentes701@gmail.com] on March 28, 2025, during an online purchase from Sportsman Outdoor Superstore for a G-Force Arms GF-12AR 12-gauge shotgun SN: 33H24YD007823 that was shipped to Eagle Sports Range [FFL] for transfer

f.  SIFUENTES provided his email address [christophersifuentes701@gmail.com] on May 25, 2025, during an online purchase from Palmetto State Armory for a Palmetto State Armory AR15 Complete Lower receiver SN: SCNL255626 that was shipped to Eagle Sports Range [FFL] for transfer

g.  SIFUENTES provided his email address [christophersifuentes701@gmail.com] on September 7, 2025, during an online purchase from Palmetto State Armory for an ATI Alpha Maxx pistol that was shipped to Eagle Sports Range [FFL] for transfer, but SIFUENTES did not have this firearm transferred to him from the store

h. SIFUENTES provided his email address [christophersifuentes701@gmail.com] on December 11, 2025, during an online purchase from Bear Creek Arsenal for a 6.5 Grendel Right side charging FDE upper Barrel that was shipped to his residence of **3322 S. 9th Place, Milwaukee, WI**

i. SIFUENTES provided his email address [christophersifuentes701@gmail.com] on December 11, 2025, during an online purchase from Palmetto State Armory for a SAR B6C 9mm pistol SN: T1102-25G00555 and a SAR USA Mete 9 9mm pistol SN: T1102-23CD23675 that was shipped to Eagle Sports Range [FFL] for transfer

j. Also on these Meta accounts, SIFUENTES has pictures and information regarding his location data, including his time in Mexico.

92. Pursuant to a federal search warrant on SIFUENTES' Facebook account, affiant located in SIFUENTES's Facebook account multiple conversations, between 2022 and 2026, that appear to discuss firearms.

93. On April 7, 2023, and April 22, 2023, SIFUENTES appears to have a conversation with Mizael LOZANO regarding the Walther P22 .22 caliber pistol, with serial number WA252381, and the Canik TP-9DA 9mm caliber pistol with serial number (SN) 21BJ09440, which were purchased by SIFUENTES on April 6, 2023, and recovery of those firearm in the possession of Daniel ACOSTA on April 16, 2023, at the Texas and Mexico border. The following partial conversations were translated from Spanish to English:

a. April 7, 2023:
   i. SIFUENTES: I already saved the 22 to send it
   ii. SIFUENTES: I'm missing the 9
   iii. Lozano: To always like that when the guy goes
   iv. SIFUENTES: That for the next purpose
   v. SIFUENTES: That isby wants a 22
   vi. Lozano: Let's see if tomorrow I go and check or call them
   vii. SIFUENTES: Call them

21

b. April 22, 2023:
   i. SIFUENTES: That things went down for him
   ii. SIFUENTES: And they passed them x X-rays
   iii. Lozano: And how did they have that
   iv. Lozano: And then?
   v. SIFUENTES: I think it came out on the x-rays
   vi. SIFUENTES: Well, I told him they belonged to a Comrade
   vii. Lozano: And is it detained or what?
   viii. SIFUENTES: That he had brought me the box
   ix. SIFUENTES: They arrested him but released him
   x. SIFUENTES: They just confiscated his truck, I think
   xi. Lozano: Did they take away the fair?
   xii. SIFUENTES: And they took his bags
   xiii. SIFUENTES: He didn't say anything like that

94. On September 18, 2025, to March 16, 2026, SIFUENTES had the following Instagram conversation with "r_3spinoza" (Profile ID 1980301408). The following partial conversations were translated from Spanish to English:

a. September 18, 2025:
   i. (SIFUENTES sent the following photo of a rifle to the subject, still in the box):



   ii. r_3spinoza: You go all out

22

b. September 30, 2025:
   i. SIFUENTES: Give me 230 for all
   ii. r_3spinoza: What and what are they

c. March 16, 2026:
   i. R_3spinoza: What brand is it
   ii. SIFUENTES: Bearcreek
   iii. SIFUENTES: 300 blackout
   iv. SIFUENTES: AR15
   v. R_3spinoza: The brand of the rifle which is the pistol
   vi. R_3spinoza: On tan
   vii. R_3spinoza: They're going to be there in your house

95. On January 24, 2026, SIFUENTES had an Instagram conversation with "Biancarivaass" (Profile ID: 1473222271). The following partial conversation was translated from Spanish to English:

a. January 24, 2026:
   i. (SIFUENTES sent the following video labeled "unified_message_1415097827065490")



   ii. Biancarivaass: A lot of weapon?
   iii. SIFUENTES: Haha I already have more 😅

23

> iv. SIFUENTES: Well, I took some with me now that I went to Mexico 🤭
> v. SIFUENTES: If one day they throw me in jail you're going to visit me eee
> vi. SIFUENTES: ??
> vii. Biancarivaass: Hahahahaha
> viii. Biancarivaass: Obviously

## *SIFUENTES' 2026 FIREARM PURCHASES*

96.  On June 16, 2026, Christopher SIFUENTES purchased four firearms from Prolific Arms FFL (West Allis, WI). SIFUENTES returned to the store on June 17, 2026, recertified his ATF form 4473, and the following four firearms were transferred to him: (1) Adler Arms AD-9 9mm pistol SN: TH715-25U03740; (2) Mauser AK-47 Omega .22LR rifle SN: B151622; (3) Palmetto State Armory PA-15 Multi .556 caliber lower receiver SN: SCNL805514; and (4) Palmetto State Armory PA-15 Multi .556 caliber lower receiver SN: SCNL805507.

## *RESIDENCE NEXUS*

97.  On June 16, 2026, Christopher SIFUENTES purchased four firearms from Prolific Arms FFL (West Allis, WI). SIFUENTES returned to the store on June 17, 2026, recertified his ATF form 4473, and the following four firearms were transferred to him: (1) Adler Arms AD-9 9mm pistol SN: TH715-25U03740; (2) Mauser AK-47 Omega .22LR rifle SN: B151622; (3) Palmetto State Armory PA-15 Multi .556 caliber lower receiver SN: SCNL805514; and (4) Palmetto State Armory PA-15 Multi .556 caliber lower receiver SN: SCNL805507. For each firearm, SIFUENTES filled out ATF Form 4473, and he identified his address as **3322 S. 9th Place, Milwaukee, WI**.

98.  SIFUENTES has the address of **3322 S. 9th Place, Milwaukee, WI** associated with his Wisconsin driver's license (issued in 2021 and expires in 2029).

99.  SIFUENTES used the address of **3322 S. 9th Place, Milwaukee, WI** for his vehicle

24

registration of a **Gray 2021 Jeep Gladiator Mojave Crew Cab Pickup with WI license plate ELIEL09 and associated VIN 1C6JJTEG7ML619277**. The vehicle was registered to Christopher SIFUENTES on April 7, 2026.

100. SIFUENTES used the address of **3322A S. 9th Place, Milwaukee, WI** for his Wisconsin recreational fishing licenses in both 2024 and 2025.

101. SIFUENTES used the address of **3322A S. 9th Place, Milwaukee, WI** for his Bank Account Header Records, Experian, Equifax, Transunion, and phone record [414-405-3917] with the most recent report date of June 10, 2026.

102. In July 2026, a subpoena was served to WE Energies, and investigators learned that SIFUENTES ended his WE Energies service on May 1, 2025, for the property at **3322A S. 9th Place (upper), Milwaukee, WI**. Investigators confirmed that Odalis CORRO ARCOS, who was identified as the mother of SIFUENTES' child, is currently residing at **3322A S. 9th Place (upper), Milwaukee, WI**. CORRO ARCOS is listed as the current WE Energies account holder at **3322A S. 9th Place (upper), Milwaukee, WI**, and she has been the account holder for that address since May 1, 2025.

103. Agents reviewed body camera footage from Milwaukee Police Department from a response to **3322/3322A S. 9th Place, Milwaukee, WI** in March 2026 for an investigation of a hit and run that West Allis Police Department was conducting. West Allis Police Department learned that a red Jeep Cherokee was involved that registered to a subject at **3322 S. 9th Place, Milwaukee, WI.** Police made contact with the front door entrance of the residence at **3322 S. 9th Place, Milwaukee, WI** and made contact with a Hispanic male who was not the owner of the red Jeep Cherokee (this investigation was conducted during nighttime hours and it was dark). It should be noted that on the body camera, two mailboxes could be seen affixed to the front of the residence,

with one near the front door and the other affixed to the siding near the stairs to get up to the front door. Police asked where the subject was that owned the red Jeep Cherokee and the Hispanic male relayed that 'he lived in the basement' and directed them to the rear side entrance of the residence. Police reported to the rear side entrance door and made contact with a separate Hispanic male who stated that the owner of the red Jeep Cherokee lived in the basement and directed the officers to the basement that was immediately to the right of the rear side entrance. Officers walked into the basement of the residence passed a shared laundry room to a closed locked door and after knocking, made contact with the owner of the red Jeep Cherokee. Police body camera showed the interior of the residence at the rear side door entrance and showed that there was a small section of stairs that went to a platform where there was a left door to a residence [**3322 S. 9th Place, Milwaukee, WI]** and a right door that appeared to lead upstairs to **3322A S. 9th Place, Milwaukee, WI**.

104. Between July 2, 2026, and July 14, 2026, case agents conducted surveillance on 3322/3322A S. 9th Place, Milwaukee. It should be noted that this residence displays a '3322' and '3322A' address placard on the front pillar and this residence has one front door and a side rear door, that the majority of subjects entering/exiting this residence, use the side rear door.

105. On July 14, 2026, SIFUENTES' Jeep Gladiator with Wisconsin license plate ELIEL09 was parked outside of the residence, and case agents identified SIFUENTES leave the residence and walk to his vehicle, which was parked on the street in front of the residence multiple times before returning to the residence. SIFUENTES remained in the residence until he walked to his vehicle at approximately 7:44 am and sat inside his vehicle until a FedEx package was delivered to the front porch of the residence at approximately 8:51 am. Once the delivery driver left, SIFUENTES exited his vehicle, walked to the front porch to retrieve the package and then walked

26

on the path to the rear side door area of **3322/3322A S. 9th Place, Milwaukee, WI**. At approximately 10:19 am, SIFUENTES left the residence, walked to his vehicle and left.

106. From July 12, 2026, at approximately 7:53 pm until July 13, 2026, at approximately 1:55 pm, SIFUENTES' Jeep Gladiator with Wisconsin license plate ELIEL09 was parked on the street in front of the residence until he walked out and left in his vehicle.

107. Agents observed SIFUENTES leave his place of employment, Greif, on July 10, 2026, at approximately 2:43 pm and get into his 2021 grey Jeep Gladiator Mojave with Wisconsin license plate 'ELIEL09' and drive to **3322/3322A S. 9th Place, Milwaukee, WI.** Upon arrival, SIFUENTES [who was solo] parked his vehicle on the street in front of the residence and walked into the rear side door of the residence, shortly after returning outside with a cooler. SIFUENTES sat in the front yard of **3322/3322A S. 9th Place, Milwaukee, WI** and was met with subjects-who arrived via their own vehicles-from his place of employment (as they were wearing 'Greif' attire). SIFUENTES and the subjects sat outside of **3322/3322A S. 9th Place, Milwaukee, WI** drinking.

108. On July 9, 2026, investigators agents located SIFUENTES' Jeep (WI- ELIEL09) parked at his place of employment [Greif] and observed SIFUENTES leave work and get into this Jeep (ELIEL09). Investigators followed the Jeep that traveled back towards **3322/3322A S. 9th Place, Milwaukee, WI**. As investigators drove through the rear alley of 3322/3322A, they noted that a subject matching the provided description of SIFUENTES matched the subject that was entering through the rear side door of **3322A S. 9th Place**. There was a black Jeep Cherokee consistently parked in front of the residence that is registered to Mizael Lozano that was primarily used by a pregnant female and a child, believed to be SIFUENTES' child's mother, Odalis CORRO ARCOS. Case agents observed SIFUENTES' child, Eliel, with CORRO ORCOS entering/exiting the rear side door of the residence traveling to/from the black jeep that is primarily

27

parked in front of the residence on S. 9th Place.

109. On July 5, 2026, at approximately 4:33 pm, during surveillance, case agents identified SIFUENTES' leaving this residence using the side rear door, walking to his Jeep Gladiator with Wisconsin license plate ELIEL09 parked on the street in front of the residence and leaving.





110. On July 2, 2026, at 11:11 am, case agents located SIFUENTES' gray 2021 Jeep Gladiator with Wisconsin license plate ELIEL09 at his place of employment, Greif, located at 1514 E Thomas Avenue, Milwaukee, WI.

111. Affiant is aware that SIFUENTES uses both the addresses of 3322 and 3322A S.

28

9th Place, Milwaukee, interchangeably on a variety of documents. However, based on agents' observation from July 5, 2026, to July 10, 2026, SIFUENTES' has only used the rear side entrance door to enter and exit the residence, which is **3322A S. 9th Place, Milwaukee (upper unit)**. SIFUENTES vehicle was parked in front of the residence on multiple occasions, and investigators observed him using the rear side entrance door on July 5, 2026, and July 10, 2026. Furthermore, SIFUENTES' child and a pregnant female, believed to be his child's mother, Odalis CORRO ARCOS, were also observed using the side rear entrance regularly between July 3, 2026, and July 10, 2026. Based on this information, investigators believe the rear side entrance is the entrance to **3322A S. 9th Place, Milwaukee (upper unit)**, which is believed to be the location where SIFUENTES resides.

### *SIFUENTES' USE OF ELECTRONIC DEVICES*

112.    It is believed that SIFUENTES' used electronic devices, including cellphones, for calls, photos, texting, online firearm purchase activity, and social media use connected to firearm purchases and sales. Also, the affiant is aware that firearms traffickers and smugglers use electronic devices, social media, and cellphones to further the movement of firearms. Electronic devices can store photographs, location data, travel history, social media and text conversations, contacts, and call history. Affiant knows that firearms traffickers and firearm smugglers keep firearms, ammunition, firearm purchase paperwork, firearm components and manufacturing devices, photographs, contact information, and banking paperwork in their residence and vehicles.

## **TECHINICAL BACKGROUND**

113.    Based on my training and experience, I use the following technical terms to convey the following meanings:

29

a. Internet Protocol Address: An Internet Protocol address ("IP address") is a unique numeric address used by devices on the Internet. Every device attached to the Internet must be assigned a public IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. An IP address acts much like a home or business street address—it enables devices connected to the Internet to properly route traffic to each other. Devices connected to the Internet are assigned public IP addresses by Internet service providers ("ISPs"). There are two types of IP addresses: IPv4 (Internet Protocol version 4) and IPv6 (Internet Protocol version 6). An IPv4 address has four sets ("octets") of numbers, each ranging from 0 to 255, separated by periods (e.g., 149.101.82.209). An IPv6 address has eight groups ("segments") of hexadecimal numbers, each ranging from 0 to FFFF, separated by colons (e.g., 2607:f330:5fa1:1020:0000:0000:0000:00d1).

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

114. As described above and in Attachment B, this application seeks permission to search for records that might be found on the person of SIFUENTES', vehicles, and the

30

PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

115. *Probable cause.* I submit that if a computer or storage medium is found on the person of SIFUENTES', vehicles, and the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few

31

examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

116. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files and information that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium on the person of SIFUENTES', vehicles, and the PREMISES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

32

b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.

33

For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer

34

and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

117. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine

35

storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

118. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

36

119.    Because there may be several people who share the PREMISES as a residence, it is possible that the PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

120.    Based on the forgoing, I believe there is probable cause to believe Christopher SIFUENTES and other known and unknown individuals have and are committing crimes of Title 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license), § 18 U.S.C § 544 (smuggling goods from the United States), 18 U.S.C. § 922(a)(9) (non-resident/non FFL received firearms), 18 U.S.C. § 933 (trafficking of firearms) and 18 U.S.C. § 371 (conspiracy). I further believe that there is probable to believe that located on the person of SIFUENTES', in vehicles, and in the PREMISES, further described in Attachments A1, A2, and A3, there is evidence of these crimes, all of which is detailed more specifically in Attachment B, that a warrant issue authorizing the search of the same.

37

## ATTACHMENT A1
### Person to Be Searched

Christopher SIFUENTES, DOB xx/xx/1997, Hispanic male.

38

The residence of **3322A S. 9th Place, Milwaukee, Wisconsin (upper unit)**. The residence is described as a residential home. The home has tan/cream siding and a brown/multi-colored shingle roof. The front of the home has '3322A' and '3322' affixed [3322 is underneath 3322A] on the front porch pillar. The front of the residence faces west on S. 9th Place, and the rear of the residence faces east, attached to an alley. There is a detached rear garage in the alley





Residence, Detached Rear Garage and Rear Alley

39

# ATTACHMENT A3
## Vehicle to be Searched

The vehicle registered by Christopher SIFUENTES described as a **Grey 2021 Jeep Gladiator Mojave Crew Cab Pickup with WI license plate ELIEL09/associated VIN of 1C6JJTEG7ML619277.**



Source: Vehicle Detail
Owner: SIFUENTES, CHRISTOPHER
Year: 2021
Make/Model: JEEP GLADIATOR
VIN: 1C6JJTEG7ML619277
License Plate: ELIEL09
Registration State: WI
Registration Date: 04/07/2026
Expiration Date: 08/31/2026
Make/Model: JEEP

Address:
📍 3322 S 9TH PL
MILWAUKEE, WI 53215

40

1.    All records relating to violations of Title 18 U.S.C § 922(a)(1)(A) (engaging in a firearms business without a license), § 18 U.S.C § 544 (smuggling goods from the United States), 18 U.S.C. § 922(a)(9) (non-resident/non FFL received firearms), 18 U.S.C. § 933 (Trafficking of firearms) and 18 U.S.C. § 371 (conspiracy), involving Christopher SIFUENTES, and others, and occurring on or after January 1, 2022, including:

   a.   firearms and ammunition;

   b.   firearm components and parts;

   c.   machines or other devices to make or assemble firearms;

   d.   records relating to any ATF forms or firearm or ammunition licensing

   e.   information regarding the identities of any perpetrators and/or co-conspirators;

   f.   information or receipts pertaining to firearms/components purchases and/or sales;

   g.   information concerning SIFUENTES' schedule, travel, and/or location at particular relevant times;

   h.   relevant bank records, checks, credit card bills, account information, and other financial records;

   i.   electronic devices, including cellphones and computers;

   j.   relevant photos, videos, IP addresses, contact information, contact lists, searches, or website;

   k.   text messages, social media messages and content, SMS messages, iMessage data, or other messaging applications relating to the sale and/or trade of firearms;

   l.   electronic mail to include the content of the emails, and associated email addresses, relating to the sale and/or trade of firearms;

   m.   all records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

41

n. all records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

o. Records and information relating to the e-mail accounts of SIFUENTES, from January 1, 2022, to the present;
   i. M.angas@hotmail.com
   ii. Christopher.lozano.35175@facebook.com
   iii. Christophersifuentes701@gmail.com
   iv. Christopherlozano34@icloud.com

2. Computers or storage media used as a means to commit or facilitate the violations described above, including cellular phones.

3. For any cellular phone, computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
c. evidence of the lack of such malicious software;
d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;
e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;
f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

42

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

4. Routers, modems, and network equipment used to connect computers to the Internet.

a. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

b. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

c. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

5. Records and information relating to sales; communications with buyers, communications with material and part suppliers, and information relating to advertisements via professions sources such as advertisements in published media, social media avenues, or private methods such as fliers and business cards.

43

During the execution of the search of SIFUENTES described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of SIFUENTES; (2) hold a device found on SIFUENTES in front of SIFUENTES' face, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.